## Case No. 15,632.

UNITED STATES v. The LOUISA BARBARA.

[Gilp. 332.] [1]

District Court, E. D. Pennsylvania. Jan. 21, 1833.

SHIPPING—PUBLIC REGULATIONS—EXCESS OF PASSENGERS.

1. To subject a vessel to forfeiture according to the provisions of the act of March 2, 1819 [3 Stat. 488], there must be an excess of twenty passengers beyond the proportion of two to every five tons of the vessel.

2. In estimating the number of passengers in a vessel, no deduction is to be made for children or persons not paying, but those employed in navigating the vessel are not to be included.

3. In estimating the tonnage of a vessel, bringing passengers from a foreign country, the measurement of the custom house, in the port of the United States at which the vessel arrives, is to be taken.

---

[1] [Reported by Henry D. Gilpin, Esq.]

This was a suit arising on an information filed by the attorney of the United States, against the Dutch ship Louisa Barbara, as liable to forfeiture, for having on board more passengers than are allowed by the act of congress. The law of March 2, 1819, declares, that if more than two passengers for every five tons of any vessel, according to custom house measurement, shall be brought into the United States, except the men employed in navigating the vessel, the master and owner shall each forfeit one hundred and fifty dollars for every passenger above that number; and if such excess amounts to twenty passengers in the whole, the vessel shall be forfeited.

It appeared in evidence, on the part of the United States, that the Louisa Barbara arrived in the port of Philadelphia on the 8th of August, 1832; that the captain presented at the custom house a report or manifest of all his passengers, amounting, exclusive of the men employed in navigating the vessel, to one hundred and seventy-eight; and that on a measurement of the vessel by the custom house officers, she was found to measure three hundred and ninety-three tons and eighty-two ninety-fifths of a ton, which would allow her to bring one hundred and fifty-seven passengers, twenty-one less than the number actually on board. On these facts the district attorney contended that the vessel ought to be condemned. It was proved by the claimants, that of the one hundred and seventy-eight passengers reported, twelve were in the cabin, nine only of whom paid, and that of the remainder, upwards of forty were children under twelve years of age, and not paying passage money, and that they were well accommodated, and arrived in good health, that the measurement of the vessel by the Dutch mode was two hundred and eighteen lasts, and that the last was to be taken as two tons, thus making the tonnage by the Dutch rule four hundred and thirty-six tons, and allowing one hundred and seventy-four passengers. On these facts the counsel of the claimants contended that the passengers, such as the act of congress meant, were not in a greater proportion than it allowed; that the spirit of the law was not violated, as they suffered no inconvenience; and that in fact, according to the foreign measurement, which ought to be adopted, the tonnage of the vessel was so great as not to render her liable to forfeiture.

Mr. Gilpin, U. S. Dist. Atty.
J. S. Smith, for claimants.

HOPKINSON, District Judge. The information in this case is founded on an act of congress passed on the 2d of March, 1819, for "regulating passenger ships and vessels." The first section of this law enacts that if the master, or other person on board of any ship or vessel, shall take on board of such

ship or vessel, at any foreign port or place, or shall bring or convey into the United States from any foreign port or place, a greater number of passengers than two for every five tons of such ship or vessel, according to the custom house measurement, the master and owner of such vessel shall severally forfeit and pay to the United States the sum of one hundred and fifty dollars for each and every passenger so taken on board, over and above the said number of two to every five tons: "Provided, that nothing in this act shall be taken to apply to the complement of men usually and ordinarily employed in navigating such ship or vessel." The second section of the act enacts "that if the number of passengers, so taken on board of such ship or vessel, or conveyed or brought into the United States, shall exceed the said proportion of two to every five tons of such vessel, by the number of twenty passengers, in the whole, every such vessel shall be deemed and taken to be forfeited to the United States." The information on trial is founded on this second section of the act, and claims a forfeiture of the ship on an alleged violation of its provisions.

There is no contrariety of evidence about the facts of this case. The ship Louisa Barbara arrived at the port of Philadelphia on the 8th August last, having on board one hundred and seventy-eight persons, taken on board at Amsterdam and brought to the United States, not being any part of the complement of men employed in navigating the ship. On a measurement of the ship by the proper officers of the custom house, she was found to contain three hundred and ninety-three tons and eighty-two ninety-fifths of a ton, custom house measurement of the United States, according to the sixty-fourth section of the act of congress of March 2, 1799 [1 Stat. 676], directing the mode of measuring a ship or vessel to ascertain her tonnage. This tonnage would allow the ship to bring to the United States but one hundred and fifty-seven passengers, at the rate or proportion of two to every five tons; and of course, if the one hundred and seventy-eight persons on board are to be deemed passengers within the meaning of the law, there was an excess of twenty-one; and as an excess of twenty is sufficient to incur the penalty of forfeiture of the ship, she has become liable to it. The defence has been mainly rested on the fact, that a large proportion of the one hundred and seventy-eight persons taken on board, were children, who paid nothing for their passage, and cannot, therefore, be considered or taken to be passengers within the intention of the law. The captain has testified that there were twelve persons in the cabin, of whom but nine paid their passage; that there were in the steerage, or between decks, one hundred and sixty-six, of whom but one hundred and twenty-seven paid their pas-

sage: that of the children on board, twenty-five were under five years of age; twenty-one from five to ten; fourteen from ten to fifteen; and seventeen from fifteen to twenty: that no passage was paid for those under twelve years of age, nor for those of twelve.

An argument, not wanting in plausibility, was urged to show that children, especially those of a very tender age, are not within the object or evil to be prevented by the law, and therefore cannot be taken to be a part of the number of passengers allowed by the law. It was indeed contended that a passenger, commercially and philologically speaking, is only one who pays for his passage, and therefore that none of the persons in this ship who did not pay for their carrying, ought to be taken into the count of the number of passengers on board of this ship, within the meaning of the law. If we were to make these deductions of children and unpaid persons on board of a vessel from the number of her passengers, we should find no warrant for it, in the law, and throw the construction of the act into such uncertainty as would render it little better than a nugatory attempt at legislation. In regard to children, we should be obliged to fix the age at which they may not be considered as passengers within the act, and the question of payment would often be as difficult to settle. The inconvenience and danger to health and life from crowded vessels, are the same whether the persons on board pay or do not pay for their passages, and although it may not be probable that the owners of vessels will bring passengers for nothing, yet the law may be evaded and defeated by secret artifices and agreements on the subject of compensation for the passage, if it is to be understood that paying passengers only are within the law. The payment would thus become a part of the case of the prosecution; and legal proof would be required of it. The only exception or limitation, given by the act of congress, is found in the provision which declares that it shall not apply to the complement of men employed to navigate the ship. The phrase is, "shall exceed, by the number of twenty passengers in the whole;" by which I understand that all persons on board are to be counted; that no exceptions are allowed; but that if, on the whole, that is, all taken, they exceed the limited number, the penalty attaches. The ship's crew are expressly excepted, but no other persons on board.

Another effort was made to withdraw this ship from the penalties of the act. It was said that if her tonnage is estimated according to the Dutch mode of measurement, the number of passengers on board would not exceed two to every five tons, and the requisitions of the act have been strictly complied with. There is considerable uncertainty about the fact here assumed; but the argument founded on it is altogether in-

admissible. It is this, that although the act of congress refers, for the tonnage of the ship, "to custom house measurement," it does not specify what custom house measurement is intended; it does not say "of the United States." It is impossible to imagine, that in the regulation of vessels coming into our own ports, to be entered at our own custom houses, to be there examined and inspected by our own officers, to ascertain whether they have conformed to our own laws, any measurement could be referred to but our own. What did congress know? What can the courts of the United States know, of any other measurement of the tonnage of a vessel than that prescribed by our own laws? If we leave this guide, we shall have a different rule for every vessel that comes into our ports, according to the various modes of measurement that may be used by the various nations of the world. The argument, too, would be absolutely destructive of the law: for if the measurement of the United States is not to be adopted in the construction of this law, because it is not expressly designated, the same reason will exclude every other measurement as no one is named. Although the excess, in this case, above the number, which incurs a forfeiture of the vessel, is small, the excess over the number allowed by the law is considerable. Whether the circumstance of there being so many children has misled the owners and captain of the ship, I cannot take into my consideration of the case. It may be a proper question to be entertained by that department of our government, which administers its liberality and mercy, and may forbear to execute the rigour of the law, where it is believed that its violation has been innocent or excusable. There is no such power here.

Decree that the ship Louisa Barbara, named in the information, be condemned and forfeited to the United States, according to the prayer of the information.